**John CERVASE, Plaintiff,**

v.

**Charles B. RANGEL, Defendant.**

**No. 76-4344 (VLB).**

United States District Court,
S. D. New York.

Nov. 2, 1978.

John Cervase, pro se.

Curtis R. Smothers, Smothers & Myers, Washington, D. C., for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This action, in which plaintiff seeks declaratory and injunctive relief, is based on defendant's alleged abuse of the franking privileges that are granted him as a member of Congress.[1]

Plaintiff is a United States citizen and a taxpayer of the United States and the State of New Jersey. Defendant represents the Nineteenth Congressional District of New York and is a member of the Congressional Black Caucus, Inc. Under 39 U.S.C. § 3210, defendant has the privilege of sending mail under frank in order to facilitate the conduct of defendant's official duties.

In his complaint, plaintiff alleges that defendant has violated 39 U.S.C. § 3210 [2] by using his frank to distribute Congressional Black Caucus literature, which literature is allegedly "unrelated to the official business" of defendant. Plaintiff further alleges that defendant's violation of 39 U.S.C. § 3210 has resulted in increased federal tax liability both for plaintiff and for the public at large.

1. 39 U.S.C. § 3201 defines "frank" as "the autographic or facsimile signature of persons authorized . . . to transmit matter through the mail without prepayment of postage . . . ."

2. 39 U.S.C. § 3210(a)(4) provides as follows:
   (4) It is the intent of the Congress that the franking privilege under this section shall not permit, and may not be used for, the transmission through the mails as franked mail, of matter which in its nature is purely personal to the sender or to any other person and is unrelated to the official business, activities, and duties of the public officials covered by subsection (b)(1) of this section.
   Subsection (b)(1) includes members of Congress among those permitted to send franked mail.

Defendant has moved, pursuant to Rule 12(b)(3), Fed.R.Civ.P., to dismiss the complaint for lack of subject matter jurisdiction. Plaintiff has moved to amend his complaint to include allegations that jurisdiction is based on 28 U.S.C. § 1339 [3] and that defendant has violated 39 U.S.C. § 3215.[4]

## II

I find that plaintiff does not have standing to bring this action; therefore, I grant defendant's motion to dismiss.[5] Because plaintiff's lack of standing would not be cured by the proposed amendment to his complaint, plaintiff's motion to amend is denied.

## III

The Supreme Court has often emphasized that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies. See *Flast v. Cohen*, 392 U.S. 83, 95 [, 88 S.Ct. 1942, 20 L.Ed.2d 947] (1968). The concept of standing is part of this limitation." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 37, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976).

■■■ The key to the concept of standing is the injury a plaintiff alleges that he has suffered or is going to suffer. *See Flast v. Cohen*, 392 U.S. 83, 91, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Here the only injury alleged by plaintiff is that defendant's allegedly illegal acts have caused or will cause an increase in his federal tax liability. Thus if plaintiff has standing, it must be as a federal taxpayer.

The leading Supreme Court case on taxpayer standing is *Flast v. Cohen, supra.* In *Flast*, a group of taxpayers sued certain federal officials. Plaintiffs alleged, *inter alia*, that a federal statute, under which defendants sought to finance instruction and materials purchases in religious and sectarian schools, violated the religion clauses of the First Amendment. Given these allegations, the Court framed the standing issue as follows:

In *Frothingham v. Mellon*, 262 U.S. 447 [43 S.Ct. 597, 67 L.Ed. 1078] (1923), this Court ruled that a federal taxpayer is without standing to challenge the constitutionality of a federal statute. That ruling has stood for 45 years as an impenetrable barrier to suits against Acts of Congress brought by individuals who can assert only the interest of federal taxpayers. In this case, we must decide whether the *Frothingham* barrier should be lowered when a taxpayer attacks a federal statute on the ground that it violates the Establishment and Free Exercise Clauses of the First Amendment.

392 U.S. at 85, 88 S.Ct. at 1944.

After an extended discussion of the issue, the Court enunciated a two-pronged test to determine whether a federal taxpayer has standing. To establish standing, a) a plaintiff must show a nexus between his taxpayer status and the legislation attacked, which legislation must constitute an exercise by Congress of its power under the taxing and spending clause of Article I, § 8 of the Constitution; and b) plaintiff must establish a nexus between taxpayer status and an alleged constitutional infringement:

**3.** 28 U.S.C. § 1339 reads thus:

§ 1339. Postal matters
The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service.

**4.** 39 U.S.C. § 3215 reads as follows:

§ 3215. Lending or permitting use of frank unlawful
A person entitled to use a frank may not lend it or permit its use by any committee, organization, or association, or permit its use by any person for the benefit or use of any

committee, organization, or association. This section does not apply to any standing, select, special, or joint committee, or subcommittee thereof, or commission, of the Senate, House of Representatives, or Congress, composed of Members of Congress, or to the Democratic caucus or the Republican conference of the House of Representatives or of the Senate.

**5.** In light of this disposition, I find it unnecessary to reach the question of whether this court has subject matter jurisdiction.

Thus, our point of reference in this case is the standing of individuals who assert only the status of federal taxpayers and who challenge the constitutionality of a federal spending program. Whether such individuals have standing to maintain that form of action turns on whether they can demonstrate the necessary stake as taxpayers in the outcome of the litigation to satisfy Article III requirements.

The nexus demanded of federal taxpayers has two aspects to it. First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute. . . . Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8. When both nexuses are established, the litigant will have shown a taxpayer's stake in the outcome of the controversy and will be a proper and appropriate party to invoke a federal court's jurisdiction.

*Id.* at 102–03, 88 S.Ct. at 1953–1954.

Applying this two-pronged test, the Court concluded that the taxpayer in *Flast* had "standing to invoke a federal court's jurisdiction for an adjudication on the merits." *Id.* at 106, 88 S.Ct. at 1956.

▮ *Flast* is still the law on the issue of taxpayer standing. *See, e. g., United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Schlesinger v.*

*Reservists Committee To Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). However, *Flast* itself emphasized that, in determining whether a particular taxpayer plaintiff has standing, consideration must be given to the nature of the claim such plaintiff advances. *Flast*, 392 U.S. at 101, 88 S.Ct. 1942. In this case plaintiff claims that defendant has violated a federal statute; plaintiff does not claim, as plaintiffs in *Flast* claimed, that the relevant federal statute is unconstitutional. I must therefore determine whether the *Flast* test, which was announced in a case that involved alleged constitutional violations, applies where the plaintiff alleges only statutory violations.

▮ On the basis of the relevant case law, I find that the *Flast* test applies. Application of that test leads to the conclusion that plaintiff does not have standing.

Perhaps the most important case in determining whether the *Flast* test applies is *Schlesinger v. Reservists Committee To Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). In *Reservists Committee*, respondents, who included five committee members who were U.S. citizens and taxpayers, brought a class action on behalf of all U.S. citizens and taxpayers. Respondents challenged the Army Reserve membership of Members of Congress as violative of the Incompatibility Clause of the Constitution, Art. I, § 6, cl. 2.[6] The Supreme Court held that respondents did not have standing either as citizens or as taxpayers. 418 U.S. at 209, 94 S.Ct. 2925.

The Court relied on *Flast* with respect to taxpayer standing, and the Court's reliance on *Flast* suggests that the *Flast* test should be applied here:

Consideration of whether respondents have standing to sue as taxpayers raises a different question from whether they may sue as citizens. *Flast v. Cohen*, supra, established that status as a taxpayer can, under certain limited circumstances, supply the personal stake essential to standing. . . .

---

**6.** That clause states that "no Person holding any office under the United States, shall be a

Member of either House during his Continuance in Office."

Here the District Court, applying the *Flast* holding, denied respondents' standing as taxpayers for failure to satisfy the nexus test. *We agree with that conclusion since respondents did not challenge an enactment under Art. I, § 8, but rather the action of the Executive Branch in permitting Members of Congress to maintain their Reserve status.*

*Id.* at 227–28, 94 S.Ct. at 2935. (footnote omitted; emphasis added).

*Reservists Committee* suggests that the *Flast* test is to be strictly applied to bar taxpayer suits that do not involve allegations that a federal statute is unconstitutional. *Reservists Committee* distinguishes between allegedly unconstitutional statutes and allegedly unconstitutional conduct of government officials. Alleging the former may confer standing, but alleging the latter will not. It would seem to follow that the mere allegation of illegal conduct by a Congressman does not suffice to confer standing on a taxpayer.

Several lower court cases support this conclusion.

In *Public Citizen, Inc. v. Simon*, 176 U.S.App.D.C. 209, 539 F.2d 211 (1976), taxpayers sought to recover from the Secretary of the Treasury all salaries that had been paid to persons on the White House staff for a period during which such persons were devoting most of their time to the presidential election campaign. Taxpayer plaintiffs alleged that defendant Secretary's payment of such salaries violated both the Constitution and a federal statute. *Id.* 176 U.S.App.D.C. at 211, 539 F.2d at 213. On the issue of standing, the D.C. Circuit relied on, *inter alia, Reservists Committee* and concluded that the taxpayer plaintiffs did not have standing. The court also cited *Flast* as denying standing to federal taxpayers who do not squarely attack the validity of taxing and appropriation statutes:

This is an area of the law where the result is clear, in view of the cases, but there is less clarity in the doctrinal development. What was wrought by the *Flast* opinion—in opening the door to taxpayer actions, yet opening it only part way—

was pragmatic in result, avoiding the flood of all manner of taxpayer actions. And yet it was rooted in a conceptual underpinning, permitting federal taxpayer standing in a class of cases where taxpayer suits were particularly appropriate and manageable—specifically, in cases involving the validity of taxing and appropriation statutes (as distinguished from cases involving "incidental expenditure[s] of tax funds in the administration of an essentially regulatory statute").

*Id.* 176 U.S.App.D.C. at 226, 539 F.2d at 218, quoting *Flast*, 392 U.S. at 102, 88 S.Ct. 1942. Thus the *Flast* test barred plaintiffs' suit in *Public Citizen, Inc.* even though plaintiffs had alleged that defendant's conduct was violative of both the Constitution and a federal statute.

In *Tax Analysts and Advocates v. Simon*, 390 F.Supp. 927 (D.D.C.), *appeal dismissed*, 168 U.S.App.D.C. 78, 512 F.2d 992 (1975), *aff'd sub nom. Tax Analysts and Advocates v. Blumenthal*, 184 U.S.App.D.C. 238, 566 F.2d 130 (1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978), plaintiffs sought a declaratory judgment that certain Revenue Rulings of the Internal Revenue Service were unlawful because such rulings violated the Internal Revenue Code. On the issue of the taxpayer standing of plaintiffs, who alleged *only* statutory violations, the district court applied the *Flast* test and concluded that the absence of constitutional attack upon a Congressional enactment was fatal to plaintiffs:

The *Flast* exception is a rigid one and the only exception to the Frothingham guidelines. Moreover it speaks in terms of constitutional challenges to Congressional action, not executive or administrative action. Since Plaintiffs Field and TAA as federal taxpayers do not assert the unconstitutionality of the IRC provisions in question here, but rather attack administrative rulings of the IRS interpreting those provisions, the Plaintiffs as taxpayers do not fall within the narrow exception of *Flast v. Cohen* and thus their taxpayer standing arguments must fall, particularly in light of two recent deci-

sions of the Supreme Court in *United States v. Richardson* . . . ' and *Schlesinger v. Reservists Committee To Stop the War* . . . .

390 F.Supp. at 935.

On appeal, the D.C. Circuit explicitly affirmed the district court's conclusion as to taxpayer standing "on the rationale stated in [the district court's] opinion." 184 U.S. App.D.C. at 242, 566 F.2d at 134 (footnote omitted).[7]

Thus the *Flast* test is applicable in this case. Application of that test results in the conclusion that plaintiff, *qua* taxpayer,[8] lacks standing.[9]

SO ORDERED.

---

**7.** Chief Judge Bazelon, who dissented in part, concurred in the majority's affirmance of the district court's holding as to taxpayer standing. 184 U.S.App.D.C. at 162–63, 566 F.2d at 154–55 (Bazelon, C. J., concurring in part and dissenting in part).

**8.** Plaintiff also lacks standing in his role as a United States citizen. *Reservists Committee, supra*, 418 U.S. at 216–227, 94 S.Ct. 2925.

**9.** This conclusion is supported by the fact that the only case that I have discovered that considers taxpayer standing in the context of alleged violations of the franking statutes concluded that a taxpayer has no standing in such a context. *Hoellen v. Annunzio*, 348 F.Supp. 305, 308 n. 2 (N.D.Ill.), *aff'd*, 468 F.2d 522 (7th Cir. 1972), *cert. denied*, 412 U.S. 953, 93 S.Ct. 3001, 37 L.Ed.2d 1006 (1973).